NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12292

COMMONWEALTH  vs.  SHAWN A. McGONAGLE.

Suffolk.     October 5, 2017. - January 18, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, Cypher, & Kafker, JJ.

Constitutional Law, Sentence, Cruel and unusual punishment.  Due Process of Law, Sentence.  Practice, Criminal, Sentence.

Complaint received and sworn to in the West Roxbury Division of the Boston Municipal Court Department on April 3, 2015.

The case was tried before Paul J. McManus, J.

The Supreme Judicial Court granted an application for direct appellate review.

Max Bauer for the defendant.
Cailin M. Campbell, Assistant District Attorney, for the Commonwealth.

LOWY, J.  General Laws c. 258B, § 3 (p), permits "victims . . . to be heard through an oral and written victim impact statement at sentencing . . . about the effects of the crime on

the victim and as to a recommended sentence."[1]  We transferred

this case here on our own motion to answer two questions:

first, whether the United States Supreme Court's recent decision

in Bosse v. Oklahoma, 137 S. Ct. 1 (2016) (per curiam),

precludes a sentencing judge from considering victim impact

statements "as to a recommended sentence" under the Eighth

Amendment to the United States Constitution and art. 26 of the

Massachusetts Declaration of Rights; and second, whether the

sentencing recommendation provision violates the defendant's

constitutional guarantee of due process.  We conclude that a

sentencing judge's consideration of victim impact statements "as

to a recommended sentence" is constitutional because the

concerns underpinning the Supreme Court's treatment of victim

impact statements before a jury during the sentencing phase of a

capital murder trial differ from those at issue here.  We

further conclude that a victim's right to recommend a sentence

pursuant to G. L. c. 258B, § 3 (p), satisfies the requirements

_____

[1] General Laws c. 258B, § 3 (p), provides:

"for victims, to be heard through an oral and written
victim impact statement at sentencing or the
disposition of the case against the defendant about
the effects of the crime on the victim and as to a
recommended sentence, pursuant to [G. L. c. 279,
§ 4B], and to be heard at any other time deemed
appropriate by the court.  The victim also has a right
to submit the victim impact statement to the parole
board for inclusion in its records regarding the
perpetrator of the crime."

of due process.  We therefore answer both questions in the negative and affirm.

Background and prior proceedings.  Following a trial in the District Court, a jury convicted the defendant, Shawn McGonagle, of assault and battery, G. L. c. 265, § 13A.  At the defendant's sentencing hearing, the Commonwealth requested that the defendant be sentenced to two and one-half years in a house of correction, the maximum possible sentence under the statute, to be served from and after his release on an unrelated one-year sentence for violating an abuse prevention order.  Immediately after the Commonwealth's recommendation, the victim gave an impact statement, during which he told the judge, "I would like . . . for [the defendant] to get the maximum [sentence], and not concurrent."  The defendant then requested a sentence of nine months in a house of correction to be served concurrently with his unrelated sentence.

The judge sentenced the defendant to eighteen months in a house of correction to be served concurrently with the sentence he was then serving.  This was a lesser term of imprisonment than the maximum possible sentence or the sentences recommended by both the Commonwealth and the victim.  The judge did not explicitly reference the victim's statement, but explained that in deciding the appropriate sentence, he placed great weight on the victim's injuries and the defendant's criminal record.

Discussion.  The defendant does not challenge G. L. c. 258B, § 3 (p), in its entirety, but instead only challenges the portion of the statute that permits victims to provide an impact statement "as to a recommended sentence."  The defendant relies on Booth v. Maryland, 482 U.S. 496 (1987); Payne v. Tennessee, 501 U.S. 808 (1991); and Bosse, 137 S. Ct. 1, to support his claim that a victim's recommendation as to a particular sentence violates the proscription against cruel and unusual punishments under the Eighth Amendment, and its "cruel or unusual punishments" counterpart under art. 26.  The defendant further contends that allowing a victim to recommend a particular sentence violates due process.

1.  Eighth Amendment and art. 26.  In Booth, 482 U.S. at 509, the United States Supreme Court held that the introduction of certain types of victim impact statements to a jury "at the sentencing phase of a capital murder trial violates the Eighth Amendment."  Specifically, the Court identified two prohibited categories of victim impact statements:  (1) those providing accounts of the emotional impact of the crime and descriptions of the victims' personal attributes; and (2) those addressing the victims' family members' opinions about the crime and the defendant, and recommendations as to the defendant's sentence. Id. at 502.  Four years later, however, the Court in Payne, 501 U.S. at 827, held that "the Eighth Amendment erects no per se

bar" to the admission of the first category of victim impact statements identified in Booth if the State authorizes their admission. The Court declined to reconsider the Eighth Amendment's prohibition on the second category of victim impact statements concerning "opinions about the crime, the defendant, and the appropriate sentence." Id. at 830 n.2.

After the defendant was sentenced in this case, the Supreme Court decided Bosse, 137 S. Ct. at 2, which clarified its holdings in Booth and Payne. The Court stated that Payne held "that Booth was wrong to conclude that the Eighth Amendment required . . . a ban" on the first category of victim impact statements. Id. The Court then emphasized that Payne was expressly limited to the first category of statements regarding "the personal characteristics of the victim and the emotional impact of the crimes on the victim's family." Id., quoting Payne, 501 U.S. at 817. Thus, Booth's prohibition as to the second category of victim impact statements concerning "characterizations and opinions [from a victim's family] about the crime, the defendant, and the appropriate sentence" remained intact. Bosse, supra.

While the prohibition on the second category of victim impact statements announced in Booth and reaffirmed in Bosse remains binding precedent in capital murder trials, that prohibition has no application here for two reasons. First,

this is not a capital murder case.  The Supreme Court in Booth, 482 U.S. at 509 n.12, expressly relied on the unique character of the death penalty, a "punishment different from all other sanctions," in rendering its decision (citation omitted).  Second, the victim impact statement in this case was made to a judge who imposed the defendant's sentence, not to a jury.  While a jury in a capital murder trial may be unable to separate relevant evidence from that which is unduly prejudicial, we trust that judges, when weighing such statements as part of the sentencing determination, will render decisions guided by the best practices for individualized evidence-based sentencing, according to law and logic, not emotion.  Cf. Fautenberry v. Mitchell, 515 F.3d 614, 639 (6th Cir.), cert. denied, 555 U.S. 951 (2008) (concerns in Booth "are severely diminished -- if not entirely obviated -- when the sentencer is a judge or a three-judge panel, rather than a lay jury").

We conclude that the Supreme Court's holding in Booth does not apply to noncapital proceedings and, therefore, it does not prohibit the statement at issue here.[2]  The dangerous uses to

---

[2] We have never interpreted art. 26 of the Massachusetts Declaration of Rights more broadly than the United States Supreme Court has interpreted the Eighth Amendment to the United States Constitution, Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 667 n.13 (2013), S.C., 471 Mass. 12 (2015), and we decline to do so here because the concerns that motivated the Court in Booth v. Maryland, 482 U.S. 496,

which a jury in a capital murder trial may put a victim's recommendation as to a particular sentence are not present at a noncapital sentencing proceeding before a neutral, impartial judge.[3]

2.  Due process.  Having concluded that the United States Supreme Court's holding in Booth, supra, under the Eighth Amendment is limited to capital murder trials, we consider whether the sentencing recommendation provision of G. L. c. 258B, § 3 (p), nonetheless violates due process.[4]  Where, as here, the statute does not affect a fundamental right or target a suspect class, we apply the rational basis test.  Goodridge v. Department of Pub. Health, 440 Mass. 309, 330 (2003).

---

505-509 (1987), are not implicated in the instant case.

[3] We note the absence of any indication that the sentencing judge in this case was unduly influenced by the victim's sentencing recommendation.  The judge specifically noted that it was his, not the victim's, responsibility to impose a sentence, the significance of which he clearly understood.  Additionally, the transcript reflects that, in sentencing the defendant, the judge properly considered the nature and circumstances surrounding the commission of the crime, the defendant's prior criminal record, and the significant injuries the victim sustained.  See Commonwealth v. Rodriguez, 461 Mass. 256, 259 (2012); Commonwealth v. Lykus, 406 Mass. 135, 145 (1989).

[4] The defendant does not specify whether he asserts this claim under the Fourteenth Amendment to the United States Constitution or the parallel provision of the Massachusetts Declaration of Rights.  Nevertheless, we analyze due process claims in this area under the same framework.  Goodridge v. Department of Pub. Health, 440 Mass. 309, 353 (2003) (Spina, J., dissenting).

"[R]ational basis analysis requires that statutes 'bear[] a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare'" (citation omitted). Id. We note that "[t]he Legislature is presumed to have acted rationally and reasonably." Commonwealth v. Leis, 355 Mass. 189, 192 (1969).

The Legislature enacted G. L. c. 258B, § 3, as part of an initiative to "provide victims a meaningful role in the criminal justice system . . . to the greatest extent possible." Section 3 "was intended to change the 'traditional view' of victims from virtually silent observers to active participants in the criminal justice process." Hagen v. Commonwealth, 437 Mass. 374, 380-381 (2002). Consistent with this purpose, G. L. c. 258B, § 3 (p), permits "victims . . . to be heard through an oral and written victim impact statement at sentencing . . . against the defendant about the effects of the crime on the victim and as to a recommended sentence." Absent this legislative authorization, crime victims would not have an opportunity to voice the impact of the crime at sentencing, even though the criminal conduct has a direct impact on them. See Hagen, supra at 380. Crime victims are unrepresented at trial. The prosecutor is not their advocate; the prosecutor advocates for the Commonwealth. Id., quoting Taylor v. Newton Div. of the Dist. Court Dep't, 416 Mass. 1006, 1006 (1993). While victim

impact statements give crime victims a voice at sentencing, a victim's ability to state the impact of a defendant's criminal conduct by recommending a particular sentence provides all victims the language to express that impact, regardless of their ability eloquently or precisely to verbalize the impact of the crime.

In addition to providing all crime victims a voice at sentencing, the sentencing recommendation provision of G. L. c. 258B, § 3 (p), assists judges in fashioning just and appropriate criminal sentences.  "[T]o impose a just sentence, a judge requires not only sound judgment but also information concerning the crimes of which the defendant stands convicted, the defendant's criminal and personal history, and the impact of the crimes on the victims."  Commonwealth v. Rodriguez, 461 Mass. 256, 259 (2012).  A victim may use the opportunity to recommend a particular sentence to the judge to urge imposition of a lengthy sentence or to request mercy.  While the decision to impose sentence rests exclusively with the judge, a victim's recommendation, whether it be for a lenient sentence in the hope of redemption or for a maximum sentence commensurate with harm, is a relevant consideration in determining the appropriate sentence to impose.[5]  Since the statute provides a mechanism for

_____

[5] The Superior Court Working Group on Sentencing Best

victims to participate in the sentencing process in a way that enhances judges' understanding of the impact of the crime, we reject the defendant's argument that the sentencing recommendation provision of G. L. c. 258B, § 3 (p), lacks a rational basis.

"Few, perhaps no, judicial responsibilities are more difficult than sentencing.  The task is usually undertaken by trial judges who seek with diligence and professionalism to take account of the human existence of the offender and the just demands of a wronged society."  Rodriguez, 461 Mass. at 259, quoting Graham v. Florida, 560 U.S. 48, 77 (2010).  The concerns underlying the Supreme Court's holdings in Booth and Bosse, that sentencing decisions not be made based on emotion, apply in nearly every sentencing decision.  They raise an important caution.  When a crime victim recommends a particular sentence to a judge, that judge must dispassionately consider that recommendation, cognizant that the sentencing decision is the judge's and the judge's alone.  We expect judges to make

---

Practices acknowledges that the impact of the defendant's criminal conduct on the victim is a relevant consideration in determining the appropriate sentence to impose.  See Superior Court Working Group on Sentencing Best Practices, Criminal Sentencing in the Superior Court:  Best Practices for Individualized Evidence-Based Sentencing, at 5-6 (Mar. 2016) ("In formulating a criminal disposition, a judge should consider . . . victim impact statements" and fashion sentence that is "proportionate to . . . the harms done to crime victims").

sentencing decisions devoid of emotion, prejudice, and the relative status of a particular crime victim.

Conclusion.  We all stand equal before the bar of justice, and it is neither cruel nor unusual or irrational, nor is it violative of a defendant's due process guarantees, for a judge to listen with intensity to the perspective of a crime victim. We affirm.

So ordered.